Velerio, I'd like to reserve three minutes for rebuttal. There are three reasons why the court should grant this petition and remand this case. First, the board ignored AEDPA's statutory requirement that it consider compliance with the United Nations protocol in its particularly serious crime determination. And therefore, Ms. Velerio was prevented from seeking protection from persecution. This court should remand so that the board can fashion a test for the few applicants, like Ms. Velerio, whose cases are still governed by AEDPA 413-F, but who are not deportable for aggravated felony convictions. Second, the agency did not sufficiently explain why her crime made her a danger to the community, which is required by the statute and the protocol. Third, the agency's decision- sorry, is that your argument that AEDPA requires that the BIA not do a single dangerousness requirement, but do two of them? My argument, Your Honor, is that the BIA do an individualized assessment of dangerousness at the first level. And that did not happen in this case, regardless of whether the BIA was going to do a separate determination of dangerousness, which the board held in matter of Carballe and QTMT was not required. This goes to whether- The existing law, according to the agency, is that once it makes a determination that on all of the facts, a particularly serious crime has been committed, it does not need to make a separate finding of dangerousness to the community. That is correct, Your Honor. We agree on that. All right. And what is your argument that there is something wrong with that? My argument, Your Honor, is about what AEDPA 413F means and requires. So the board here noted- We decided that in Chome. That's correct, Your Honor. And Chome rejects the argument you are now making. That is correct, Your Honor. But first of all, the Chome court's- We may have gotten something wrong about the date. But that does not mean the other holdings in the opinion are incorrect. But, Your Honor, the Chome court also was deferring to the BIA on the issue of whether there should be a separate determination, as opposed to how compliance with the protocol would factor into the substance of the particularly serious crime determination, how the board would decide. So even if you disagree with me on the issue of AEDPA's 413F requirement, the agency here did not make a sufficiently individualized determination about why her crime made her a danger to the community. So the immigration judge did not cite any specific harm to the victim of identity theft. The judge cited to loss to state institutions as a result of the mail fraud, but specifically stated that she declined to consider whether mail fraud was a particularly serious crime. The board upheld the judge's decision, again citing to no specific harm to the victim of identity theft, but stated that there was financial harm to state institutions because of the mail fraud, and that identity theft is a problem in our society. These decisions say nothing about why the specific facts and circumstances of her crime made her a danger to the community. On this argument, is our standard of review that basically the no reasonable fact finder could have on these facts concluded as the agency did? The standard of review here would be on this point. The standard of the review would be abuse of discretion, as the Ninth Circuit has held in Arbid and several other courts have held that review of the particularly serious crime is reviewed if it's merely about the weighing of the Frantescu factors. The issue is abuse of discretion. If it is a legal error, as the board here about the AEDPA determination, and also the adequacy of its compliance with the UN protocol, that would be reviewed de novo. Suppose someone's committed murder. Yes, Your Honor. Are you saying that the BIA and the immigration judge need to look at the individual circumstances of the crime, listen to whether the person has been rehabilitated and repents, and those sort of things? On the issue of murder, the board has held that it's a per se particularly serious crime in the board's decision in AA. So the board can say it's a per se particularly serious crime based only on the nature of the elements. So your argument then isn't that the statute always requires looking at the individual circumstances. You accept the proposition that the BIA can decree some crimes per se simply by the nature of the crime. Why then couldn't the BIA say there are other crimes that we will look at certain circumstances regarding the commission of the crime, but that's all we're going to look at. We're not going to attempt to predict anything about that individual. So the BIA can do either thing. And here, the immigration judge said, it's not a per se particularly serious crime. We're reviewing it. Some offenses may be particularly serious crime. Some may not. So we're going to complete the Frantesco analysis and look at the nature and circumstances of the crime. But there is where the agency didn't sufficiently engage in an individualized determination of the circumstances of the facts of her crime. Rather, they opined about the nature of identity theft without engaging at all in exactly what happened in her case and what the harm was to her victim. But wasn't it palpable what she did in her case? She stole a living person's identity and used it repeatedly. And as I understand it, set up two accounts and used one to correspond to the other. Isn't that all the agency needed to know at that point? What else would it have needed to know? Well, the agency needs to do this individualized determination, and especially because of the words chosen by Congress and the words in the protocol, which is that the crime be particularly serious. That is two modifiers to the word crime. So it's not enough just that it be a crime and that it is something that society thinks is bad, because that, of course, encompasses all crime. That's what makes it a crime. It has to be a unique, a small subset of the general. Why is that logically? If I say someone has a particularly serious cancer, I don't think that necessarily implies that it's a small subset of cancers, does it? And so why, if Congress said a particularly serious crime, would we logically presume that it must be a small subset of crimes? Because the Board of Immigration Appeals in 1982 said so in matter of frantesco. They said that this language chosen indicates that this is only for the extreme cases, that it must be more serious than a serious non-political crime, a different bar to refugee protection, that the handbook, the UNHCR handbook says it's for capital crimes or very grave, punishable acts. So the board has said these words, particularly serious crime, mean extreme cases more serious than a serious non-political crime and, therefore, really for a small subset of crimes. This is nothing more than an argument that the agency applied its usual rules in frantesco. You disagree with the result on the facts of the case. And it's an abuse of discretion review. How could we say the agency abused its discretion on the facts of this case? Well, first of all, it's not just an abuse of discretion because there's also the issue of which statute it applied and whether that was the correct statutory interpretation of EdPAS 413F and its compliance with the protocol language. Also, there is the issue of the agency, in particular the immigration judge, stating the test for particularly serious crime and mentioning in her test matter of NAM instead of matter of frantesco, saying nothing about whether the nature and circumstances of her crime made her a danger to the community, which is what both the board in frantesco and the board in Carvalho said was the most important part of the particularly serious crime determination. OK. Are you saying that the agency made a mistake in characterizing this as relief from deportation? Or do you agree that that is the correct standard? No, I agree that this is the correct standard, that it was the old withholding statute that should apply to her case. And you're making a separate argument that the citation to NAM as opposed to the citation to frantesco is a separate error of law? That is correct, yes. Because the board's decision in NAM eliminated the most important of the frantesco factors. The agency says that simply isn't true, and you have not established in any way an inconsistency in the standards that followed from frantesco. I would submit that yes, NAM, and in fact, Judge Henry of the Tenth Circuit in his concurring opinion in NAM versus Holder noted that the restatement of the particularly serious crime test is notably missing the fourth and most important of the frantesco factors. And the agency in its restatement of this test is missing that very, very important and most important one. So I disagree with the agency here that NAM did nothing and changed nothing about the test. I do think that the importance is on dangerousness, and here the focus was just not enough on both the statutory language that individualized whether her crime made her a danger to the community and whether these words, particularly serious crime, mean something beyond any other crime. What is special and different, and what is special and different in how this contradicts with what the board has held in a long line of published cases, the generally violent crimes are particularly serious crimes. And then in two published cases said drug trafficking and possession of child pornography because of those very, very special types of crimes are particularly serious crimes. That is what the agency is going up against here and changed course, holding that it was this nonviolent identity theft conviction is particularly serious crime without really adequately explaining its reasonings. On your first argument, as I understand it, you agree that this properly characterizes deportation, not withholding. That's correct. I think your argument is that having so properly characterized that they then failed to apply the subsection F reference to the protocol. That's correct, Your Honor. The premise there is that outside of the narrow window of the EDBA subsection F reference to the Protocol for Deportation Proceedings that the agency is not advocating an interpretation that is compliant with the protocol. Correct, yes. And what's the basis for that? Because that's what I have trouble finding is that in the outside the window, it seems to me, they're also taking an interpretation that they advance as achieving compliance with the protocol. May I? I see that I'm out of time. That the reason why the NAM test is out of compliance with the protocol is because it does not focus enough on the dangerousness which is required. That's the whole purpose behind the particularly serious crime exception, is so that countries cannot give any protection to somebody from persecution if that person would be a danger to the community. But that just winds us back to really your second argument that the agency seems to be saying, when we look at the crime itself and define it, we're necessarily focusing on dangerousness and looking at the crime. That is correct. That is what the agency is supposed to do to comply with the protocol. Thank you. Thank you. Ms. Bonzo, good morning. Good morning, Your Honors. May it please the Court, Jim Bonzo on behalf of the respondent. That focus on dangerousness is exactly what happened in this case. Petitioner, over the course of 10 years, perpetrated aggravated identity theft against a real individual to the tune of over $170,000. That is a significant crime. The agency's focus on the pervasiveness of the identity theft in this country and the damage that it does to all of us was precisely the inquiry demanded of them. Petitioner only stopped in her identity theft scheme because she was caught. The individual whose identity she had stolen sought to procure a car loan, and at that point learned that this had happened, that her identity had been compromised. And so that's where we are in this case. This is a very simple, a much more simple set of circumstances than has been depicted on the papers. Petitioner? There is, as Judge Kayada and I have pointed out, there are sort of two strands of argument. She has an argument that this got re-characterized by the BIA as having to do with deporting and not removal, and that the deportation statute does have, at least as to her, the ADEPA clause, and that the agency nonetheless doesn't mention the ADEPA clause, and that its analysis is, as a result, too restricted. She seems to suggest that if the agency looked at the ADEPA clause, there would be a different outcome to this case. So what is the defense of the agency for not even mentioning the clause? The simplest answer is that that argument was not presented to the agency. I'm sorry. You can't go there, because both parties seem at the immigration judge level to have viewed this as a removal case, the government as well as the applicant. There was no reason, if it was a removal case, to get into this ADEPA clause, which is only pertinent to the deportation case. So she didn't have an opportunity. I apologize if I misspoke, Your Honor. The specific protocol arguments that are set forth at great length in amicus pleadings in this case, those were not presented to the agency. What the board did was to correct the immigration judge's incorrect reference to removal proceedings. That is not what we have. Petitioner is deportable for having entered without inspection, and she conceded her deportability as such. The entry was back in 1991. But no one knows that the agency is going to treat this as deportation and not removal until the opinion comes out. The next level of review, I suppose there could have been a petition for rehearing before the BIA saying, well, now that we know it's deportation, we need to be able to present deportation-related arguments to you. That apparently didn't happen. So the only other opportunity to raise the arguments is in the Court of Appeals, where I would think it's debatable whether the petitioner here raised the arguments, amicus raised the arguments. But it's the first time the arguments can be made. So I'm a little leery of your non-exhaustion. So what do we do in this situation? If, in fact, it's not going to make any difference in the end because the agency applied law that was equivalent law without much of an explanation about why this clause makes no difference in this case, then we wouldn't send it back. Right? Correct. So that's sort of where I am in my thinking on this case. So I think you have to respond to the question of why the agency's analysis is adequate here, despite the lack of mention of the ADEPA section. Section 413F simply does not apply to an individual-like petitioner. She is not ineligible for withholding because she has committed an aggravated felony. She is not deportable as an aggravated felon. The additional latitude, I apologize. No, that's what I thought you were going to tell me. I didn't want to interrupt a question. The additional latitude afforded to the Attorney General through Section 413F to give greater consideration and to be in ever greater conformity with the UN protocol is not relevant to petitioner. It's another remedy that she simply doesn't need in her circumstances where her offense is not, per se, a particularly serious crime, where there is additional and thorough analysis to be had. That's precisely what the agency did. The board's standards have evolved. The long line of published board decisions addressing particularly serious crimes have worked to be in lockstep with the 1980 Refugee Reform Act, with each juncture at which United States immigration law, regulations, and agency decisions have sought to be in conformity with the protocol to which we acceded as a nation in 1968. Go ahead. No, go ahead. It seems you portray the subsection F as essentially saying, well, we're now going to create this blanket rule for aggravated felonies. But this is a reminder that may be a little overbroad, so agency, remember your duty to comport with the protocol. And you would then say, and that's what we do anyhow outside of that section with others. And they say, no, you don't. There's a special allegiance to the protocol in the narrow deportation window. What do you point us to to assure us that outside that window, the focus is the same? Unfortunately, there is no bright line point at which the board, for example, has said, let's recap. This is where we started. This is where we are now. For this particular individual, this is where we land. It's an evolution. It's a continuum. And because the protocol itself is not self-executing, because the UN handbook is merely a guide, that isn't incorrect. It isn't inappropriate. If anything, it's incredibly thorough. As your honors have rightly pointed out, upon a determination that a given conviction is for a particularly serious crime, dangerousness to the community, it's subsumed. It's incorporated into that determination. And here, despite, I would note, this court has already upheld petitioner's conviction for aggravated identity theft. This court has already agreed with the factors considered by the district court. It's already spoken to the severity and the circumstances of petitioner's particular crime. But some additional second evaluation of petitioner's individual circumstances and her particular situation was not required in assessing whether her conviction was for a particularly serious crime. That's circular. Let me try it this way. That's very helpful. At the time, Congress added to the deportation of 413F reminder. It also greatly expanded the category of aggravated crimes that were per se crimes. And it is logical to think that what the 413F referred to was this addition of aggravated crimes and was not meant to add any further requirement as to non-aggravated crimes, which were already under a statutory requirement of taking into consideration the Refugee Act. Correct. Are we in on why would we reach that far? You're not asking us. Absolutely not. Absolutely not, Your Honors. I've endeavored to provide assurances that at each point in the board's evolution on the particularly serious crime point and at each juncture in immigration law's evolution, we have been in conformity with the protocol. And Chum points that out. Absolutely. And is the law the same? Yes. OK. Thank you very much, Your Honors. If there are no further questions, I would submit that the petition for review should be denied as there's been no abuse of discretion shown. Thank you. Thank you. Your Honor, the best remedy here is to remand to the agency so that it can finish its work. And it identified that it should have been the old law that applied, but didn't finish and say what compliance with the protocol meant for people like her who are not aggravated felons. The only board case on point, matter of QTMT, addressed the issue of whether the enactment of AEDPA 413 as a criminal offense was a crime. And the AEDPA 413-F superseded the aggravated felony bar to eligibility for withholding. And that's what this court was deferring to in Chum and whether the compliance with the protocol required that separate determination of dangerousness. Since that hasn't been decided yet by the board, that the best remedy here would be to remand to the agency to finish its work, decide what AEDPA 413-F means for people like Petitioner who don't have aggravated felony convictions. If there are no further questions, may I submit the case? Thank you.